UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| CHAD ANTHONY BENFIELD, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 2:25-CV-40-TAV-CRW |
| | ) | | |
| MATTHEW PATTERSON, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a prisoner housed in the Carter County Detention Center, filed this pro se civil rights action under 42 U.S.C. § 1983 [Doc. 2], along with a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will grant Plaintiff's motion, permit Plaintiff to proceed as to a claim that his religious rights have been infringed, and dismiss all remaining claims.

I. **MOTION TO PROCEED *IN FORMA PAUPERIS***

It appears from Plaintiff's motion to proceed *in forma pauperis* [Doc. 1] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars

($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk.  28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this memorandum opinion and order to the custodian of inmate accounts at the institution where Plaintiff is now confined.  The Clerk will also be **DIRECTED** to furnish a copy of this memorandum opinion and order to the Court's financial deputy.  This memorandum opinion and order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).  The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure.  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

B.   **Plaintiff's Allegations**

Plaintiff is housed in protective custody at the Carter County Detention Center because he is a sex offender, and "the inmates in general population won[']t let [him] live in general population without harming [him]" [Doc. 2, p. 4]. "A few months ago[,] they started having church services" for inmates, but inmates in protective custody are not allowed to attend [*Id.*]. Nothing in the Inmate Handbook states that inmates on protective custody may not attend church services [*Id.*]. Plaintiff filed a grievance about the issue and was told he could attend church services if he would sign off protective custody "and go to general population" [*Id.*]. Otherwise, he would simply be provided with a Bible, and "that would be [his] religious service" [*Id.*]. "They" told Plaintiff that "they don't want

3

protective custody inmates around each other" [*Id.*]. But there is a cell on protective custody that houses eight inmates in the same cell [*Id.*].

Plaintiff filed a grievance appeal to the Sheriff, but no response was given [*Id.* at 5]. The Jail Administrator, Matthew Patterson, tries to get inmates to sign off protective custody and live in general population [*Id.*]. But a sex offender living in general population is at risk of harm by other inmates, and the Inmate Handbook states that sex offenders are "to let the staff know" so they may be housed safely [*Id.*]. The Inmate Handbook does not, however, state that inmates on protective custody will lose their rights [*Id.*]. Instead, only inmates who are locked down for disciplinary reasons lose "religious services[,]" and Plaintiff has been housed in the Carter County Detention Center for over seven years without a disciplinary charge [*Id.*].

On February 1, 2025, Defendant Matthew Patterson took away almost all commissary privileges for inmates on protective custody [*Id.* at 6]. Inmates on protective custody may now order only hygiene items [*Id.*]. Plaintiff filed a grievance and was told he could sign off protective custody and have commissary privileges in general population [*Id.*]. Plaintiff was not given a reason the commissary privileges were taken away [*Id.*]. On January 17, 2025, Plaintiff filed an appeal to the Sheriff, but it was never answered, even though the Inmate Handbook states that appeals will be answered within 15 days [*Id.*].

On March 1, 2024, recreation privileges were cut down to three days a week [*Id.*]. Inmates are only allowed to shower and use the telephone for one hour on those three days [*Id.*]. "They" put the rule changes on the kiosk, which requires inmates to accept the rule changes to use the kiosk [*Id.* at 7]. Plaintiff wrote Patterson a letter about the issue and

4

was told he could sign off protective custody [*Id.* at 6]. He also wrote Sergeant Gray a request asking if inmates had to accept the rule changes to use the kiosk and was told he could sign off protective custody at any time [*Id.* at 7]. When Plaintiff told Patterson he could not live in general population because he is a sex offender, Patterson stated that he would have to "deal with the consequences of those charges" himself [*Id.* at 6–7].

Therefore, Plaintiff claims, inmates on protective custody are being punished for needing protection, and no reason exists for the difference in treatment between inmates on protective custody and those in general population [*Id.* at 6, 7, 8]. Aggrieved, Plaintiff filed the instant action against Patterson seeking $300,000 in damages and an order permitting protective custody inmates to attend church services and receive the same recreation and commissary privileges as inmates receive in general population [*Id.* at 9].

### C. Analysis

#### 1. Privileges in Protective Custody

Plaintiff complains that inmates in protective custody do not get the recreational, commissary, shower, and telephone privileges of inmates in general population [Doc. 2, pp. 6, 7, 8]. But "[t]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Instead, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" will establish a claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted). Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In examining such claims, the court must determine

5

whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36; *see also Rhodes*, 452 U.S. at 347.

There is no federal constitutional right of access to commissary privileges. *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) (stating that "we know of no constitutional right of access to a prison gift or snack shop"); *Newell v. Ruth*, No. 1:11-cv-86, 2014 WL 4411045, at *9 (E.D. Tenn. Sept. 8, 2014) ("[C]ommissary access is a privilege, not a right."). Consequently, Plaintiff cannot state a claim for violation of his constitutional rights based on commissary restrictions.

And while the First Amendment protects a prisoner's right to communicate with the outside world, it does not provide him with a per se right to a telephone to do so. *See United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000) ("Prisoners have no per se constitutional right to use a telephone[.]"); *Miles v. Scanlon*, No. 1:21-cv-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (holding prisoners "do not have a constitutional right to a particular form of communication" under the First Amendment). Therefore, the restrictions on telephone use in protective custody fail to raise a constitutional issue.

Further, the Carter County Detention Center's three-showers-a-week policy in protective custody fails to implicate constitutional protections, as such restrictions do not deny Plaintiff of "the minimal civilized measure of life's necessities[.]" *See Perkins v. S.C.C.F. Core Civic*, No. 3:22-cv-5, 2022 WL 482549, at *4–5 (M.D. Tenn. Feb. 15, 2022)

6

Case 2:25-cv-00040-TAV-CRW    Document 6    Filed 03/31/25    Page 6 of 12    PageID #: 34

(finding "facility's three-showers-a-week policy for inmates housed in protective custody" did not violate Eighth Amendment).

Finally, Plaintiff has not plausibly alleged that the restrictions on recreation in protective custody are constitutionally objectionable. Prisoners are entitled to enough exercise to maintain reasonably good physical and mental health. *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). Here, it is unclear whether Plaintiff is asserting that he is prohibited from all recreational opportunities outside of the three one-hour periods set aside for recreation weekly, or whether he is only allowed formal, out-of-cell recreational opportunities during this period. But regardless, Plaintiff's complaint does not allege that his physical and mental health has suffered by the limited amount of recreation he receives. Therefore, Plaintiff's complaints about his access to recreational opportunities on protective custody fail to state a claim.

### 2. Handling of Grievances/Detention Facility Procedure

Plaintiff complains that some of his grievances have gone unanswered, and that grievances are not handled in accordance with the procedures and policies set out in the Inmate Handbook. But inmates have no constitutional right to a grievance procedure. *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). And a facility's failure to follow its own policies are not issues of constitutional significance. *See McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive

does not create a protectible liberty interest). Accordingly, these allegations fail to state a cognizable constitutional claim.

### 3. Equal Protection

Next, the Court considers whether Plaintiff's claim that inmates in protective custody do not receive the same opportunities as inmates in general population raises an equal protection claim. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Plaintiff cannot maintain an equal protection claim based on disparate treatment between prisoners in the general population and those in protective custody, as "prisoners in protective custody clearly are not similarly situated to prisoners in the general population." *Cadarette v. Curtin*, No. 1:12-cv-179, 2012 WL 1981726, at *5 (W.D. Mich. June 1, 2012). Therefore, Plaintiff's complaint fails to state a cognizable equal protection claim.

### 4. Religious Rights

This leaves Plaintiff's claim that his religious rights are violated because he is not allowed to attend congregational church services [*See* Doc. 2, pp. 4–5]. Such an allegation implicates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), and the Free Exercise Clause of the First Amendment, U.S. Const. amend I.

8

RLUIPA "applies to prisons that receive federal funds and prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)).

"[T]he Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law. . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). To establish a free exercise violation, Plaintiff must establish that (1) the belief or practice asserted is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987) (internal citations and citation omitted).

Under both the First Amendment and RLUIPA, a prisoner must show that the challenged government action substantially burdens his religious beliefs in order to sustain a claim. *Haight*, 763 F.3d at 559; *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010); *see also Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). And "the Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). A burden is substantial where it (1) forces an individual to choose between following the tenets of his religion and foregoing governmental benefits or (2) places "substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Id*. at 734.

9

Case 2:25-cv-00040-TAV-CRW    Document 6    Filed 03/31/25    Page 9 of 12    PageID #: 37

Under the First Amendment, "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs" even if a religious practice is substantially burdened. *Walker*, 771 F.2d at 929. Accordingly, a prisoner's rights may be reasonably restricted to accommodate "legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). If a regulation that interferes with an inmate's constitutional rights is reasonably related to a legitimate penological interest, the courts then balance "(1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy alternatives' exist that suggest 'the regulation is not reasonable.'" *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (quoting *Turner*, 482 U.S. at 89–91).

A correctional institution must first "articulate their interest in the regulation" to demonstrate a legitimate penological interest. *Figel v. Overton*, 121 F. App'x 642, 646 n. 2 (6th Cir., Feb. 4, 2005) (internal citations omitted). The correctional facility's burden of demonstrating its interest is "slight, and in certain instances, the connection may be a matter of common sense." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Once it does so, "the burden is on the prisoner to disprove the validity of the regulation at issue." *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.")).

Here, there is not enough information before the Court to determine whether the Defendant has an articulable interest in restricting inmates on protective custody from

attending congregate worship services, or whether Plaintiff has alternate means to observe his faith. *See, e.g., Arauz v. Bell*, 307 F. App'x 923, 928–29 (6th Cir. 2009) (finding free exercise claim survived initial screening where the information was insufficient to permit a full *Turner* analysis due to the lack of a response by defendants). Accordingly, the Court will permit Plaintiff to proceed with this claim under RLUIPA and the Free Exercise Clause.

### III.  CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4. Plaintiff has set forth a plausible claim that his religious rights have been infringed under RLUIPA and the Free Exercise Clause, and this claim will **PROCEED**;

5. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Matthew Patterson;

6. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Order;

7. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action will be dismissed;

9. Defendant shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the complaint, it may result in entry of judgment by default;

10. All remaining claims are **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE