UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| CHAD ANTHONY BENFIELD,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW PATTERSON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 2:25-CV-40-TAV-CRW |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a prisoner housed at the Carter County Detention Center ("Jail") during all relevant times, was permitted to proceed in this civil rights action under 42 U.S.C. § 1983 on a claim that his inability to attend congregational worship services at the Jail violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) [*See* Doc. 6, pp. 8–11]. Before the Court is Defendant Matthew Patterson's motion for judgment on the pleadings and/or for summary judgment [Doc. 30], which is accompanied by exhibits [Docs. 30-1, 30-2] and a memorandum in support [Doc. 31]. Plaintiff has not responded to the motion, and the deadline to do so has passed. *See* E.D. Tenn. L.R. 7.1. Consistent with the Court's Local Rules, the Court finds Plaintiff has waived opposition to the sought relief. *See* E.D. Tenn. L.R. 7.2. Further, upon consideration of the Parties' pleadings, the evidence presented, and the applicable law, the Court finds Defendant's motion for summary judgment [Doc. 30] should be **GRANTED** and this action **DISMISSED**.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a

light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)). Thus, to successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

But when a motion for summary judgment is based on a plaintiff's failure to exhaust his administrative remedies, the defendant bears the burden of proof. *Surles v. Andison*,

678 F.3d 452, 458 (6th Cir. 2012). And "[i]n cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455–56 (citing *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (internal quotation marks omitted)). Accordingly, when non-exhaustion is raised as a defense, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* at 456 (citing *Risher v. Lappin*, 649 F.3d 236, 240 (6th Cir. 2011)).

## II. UNDISPUTED FACTS

Plaintiff was housed at the Jail from August 2017 until July 2025, when he was transferred to the Bledsoe County Correctional Complex ("BCCX") [Doc. 30-2 ¶¶ 3, 17]. At various times during his incarceration in the Jail, Plaintiff was housed in the protective custody ("PC") unit because he is a sex offender and was labeled "a snitch" by inmates in general population [Doc. 2, p. 4; Doc. 30-2 ¶ 10, p. 41]. Assignment to the PC unit is voluntary, and any inmate on PC can obtain reassignment to general population if he chooses [Doc. 30-2 ¶ 9]. Inmates in PC are always segregated from contact with inmates in general population for their safety [*Id.*].

Inmates in general population are permitted to attend in-person religious services—essentially in-person group Bible study—staffed by outside church volunteers, but inmates in PC are not permitted to attend the congregational services [Doc. 2, p. 4; Doc. 30-2 ¶ 11]. Aggrieved by this, Plaintiff filed a grievance and was told that he would

have to sign off PC and go to general population if he wanted to attend congregational church services [Doc. 2, p. 4]. Otherwise, Plaintiff was told, he would be provided a Bible [*Id.*].

Inmates in PC are not allowed to attend the general population in-person services for a variety of reasons [Doc. 30-2 ¶ 12]. One, mixing PC inmates with general population inmates puts PC inmates—who have usually expressed a concern about their safety in general population—at greater risk of assault [*Id.*]. Two, mixing PC inmates and general population inmates also puts correctional officers' safety at greater risk, because it increases the likelihood of inmate-on-inmate violence, which in turn subjects any officer who might have to intercede into such incidents at risk of assault [*Id.*]. And three, the process of permitting in-person Bible study or worship services with volunteers is time-consuming and taxing on corrections staff, who must break the approximately 200 general population prisoners into several smaller groups for security purposes [*Id.*]. The manpower of the Jail consists of approximately six corrections officers working at any given time [*Id.*]. To then add more than 40 PC inmates, who would have to be segregated from the general population inmates, would require multiple, additional smaller sessions of in-person study and create a borderline unmanageable strain on the Jail's staff and resources [*Id.*].

On January 15, 2025, Plaintiff submitted a grievance regarding the lack of religious service/in-person Bible study sessions in PC [*Id.* ¶ 13]. On the same day, the Jail denied the grievance [*Id.* ¶ 14, p. 42]. Plaintiff states that he filed an appeal from his grievance [Doc. 2, p. 2]. But neither the Sheriff nor the Jail ever received an appeal of the grievance

by Plaintiff [Doc. 30-2 ¶ 15]. And Plaintiff has not provided any records or other documentary proof that he submitted an appeal [*See* Doc. 30-1 ¶¶ 11, 21, pp. 22, 26].

Plaintiff was always free to practice his religion, and the Jail never took any steps to hinder his practice [Doc. 30-2 ¶ 16]. In fact, a minister, clergy, or other volunteer affiliated with the previously referenced in-person Bible study sessions could visit Plaintiff at any time during visiting hours for in-person Bible study or other religious activities upon request by Plaintiff [*Id.*]. But Plaintiff never made any such request [*Id.*].

Plaintiff is no longer an inmate at the Jail. He was transferred to the Bledsoe County Correctional Complex in July 2025 [Doc. 30-2 ¶ 17]. He was later transferred to the Hardeman County Correctional Facility in Whiteville, Tennessee, where he remains housed [Doc. 28].

## III. LAW AND ANALYSIS

Defendant contends that he is entitled to (1) judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure because Plaintiff has not alleged any facts to indicate that Patterson took any action that could arguably violate Plaintiff's right to religious freedom [Doc. 31 p. 6; citing, *e.g., League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("The factual allegations [of the complaint], assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."); (2) a grant of summary judgment because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), prior to filing suit [*Id.* at 7–11]; and (3) qualified immunity as to any claims against him individually [*Id.* at 11–13].

Defendant also contends that Plaintiff cannot show a custom or policy of Carter County that was deliberately indifferent to his constitutional rights [*Id.* at 13–17], he cannot demonstrate a violation of his First Amendment rights or of RLUIPA [*Id.* at 17–22], and Plaintiff's request for injunctive relief is moot given his transfer to another facility [*Id.* at 23].

Although Plaintiff did not respond to Defendant's motion, he filed his complaint under penalty of perjury [Doc. 2 p. 9]. Therefore, the Court treats Plaintiff's complaint as an opposing affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (recognizing that a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment").

The Court will first address the issue of exhaustion before turning to a consideration of whether Plaintiff can demonstrate a violation of his rights under the First Amendment or RLUIPA. Because Plaintiff's case may be resolved upon consideration of these two matters, the Court declines to address Defendant's remaining arguments.

**A. Exhaustion**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirements of exhaustion are not set out in the PLRA itself. Rather, to satisfy the exhaustion requirement, an inmate must properly complete the grievance procedures put forward by his correctional institution, including any procedural rules and deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006);

*see also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("It is the prison's requirements . . . that define the boundaries of proper exhaustion."). Moreover, exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Ross v. Blake*, 578 U.S. 632, 641 (2016). Therefore, "exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoners] believe the procedure to be ineffectual or futile[.]'" *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal citations and citations omitted).

The Jail's procedures permit inmates to make requests and file grievances on the kiosk system [Doc. 30-2 ¶ 4]. Requests and grievances each have their own procedures and forms [*Id.*]. The separate policies for submitting a request and for submitting a grievance were in place and made known to Plaintiff when he was first incarcerated in August 2017 [*Id.*]. Plaintiff was provided a copy of the inmate grievance procedures upon his admission to the Jail in August 2017 [*Id.* ¶ 4, pp. 8–40].[1]

The kiosks are made known and taught to the inmates when they are first incarcerated [Doc. 30-2 ¶ 5]. In addition to submitting requests, grievances, and appeals via the kiosks, inmates may use the kiosks for everyday matters, including permitting inmates to access their accounts, make commissary requests, schedule visitations, etc. [*Id.*]. The kiosks permit inmates to access the policies, procedures, and forms in the Inmate

[1] The Inmate Handbook filed by Defendant as an exhibit has the date of June 2024 on it, but that is because the Inmate Handbook was updated at that time in areas unrelated to inmate requests and grievances [Doc. 30-2 ¶ 4]. The procedures regarding requests and grievances have remained unchanged since Plaintiff was first jailed in 2017 [*Id.*].

Handbook [*Id.*]. The Inmate Handbook provided to Plaintiff in 2017 has separate categories for inmate request procedures and inmate grievance procedures [*Id.* ¶ 16].

To follow the required grievance procedure at the Jail, inmates "must completely fill out the [grievance] form and submit it electronically through the kiosk machine" [Doc. 30-2 ¶ 7, p. 26]. The inmates are also notified, upon receipt of the grievance, the incident will be assigned to an officer for investigation and the findings forwarded to the Jail administrator [*Id.*]. Under the Jail's procedure, the inmate should receive a response within ten working days [*Id.*]. If the grievance cannot be satisfactorily answered within 10 days, the inmate will receive a temporary response at that time that explains the delay [*Id.*]. In such circumstances, "the inmate will receive a response within thirty days of submitting the grievance form" [*Id.*].

The Jail also has an appeal process for a grievance that results in an unsatisfactory answer to the inmate [Doc. 30-2 ¶ 8, p. 26]. That process requires as follows:

> If an inmate is not satisfied with the response given, then the inmate may file a grievance appeal to the Sheriff or his designee within three (3) days of receipt of a response. The appeal can be filed electronically through the kiosk machine. The Sheriff or his designee has fifteen (15) days from the receipt of the appeal to reply to your appeal. The response from the Sheriff shall be the final step in the appeals process. The Sheriff will review all appeals of grievances and that response will be final.

[*Id.*].

In his complaint, Plaintiff alleges that he "filed a grievance and also appealed the grievance" but was never given a response [Doc. 2. pp. 2, 5]. On January 15, 2025, Plaintiff submitted an inmate grievance regarding the lack of religious service/in-person Bible study in PC, and the Jail denied Plaintiff's grievance in a response issued the same day [Doc.

30-2 ¶ 14, p. 42]. Defendant avers that neither the Sheriff nor the Jail received an appeal of that grievance [*Id.* ¶ 15]. And Plaintiff, in response to requests to provide any proof or record of ever submitting any appeal, provided nothing [*See* Doc. 30-1 ¶¶ 11, 21, pp. 4, 10, 22, 26].

Plaintiff has not disputed that his grievance history does not contain any appeal of his grievance regarding in-person Bible classes. And Plaintiff's "conclusory allegation[] . . . and unsubstantiated assertion[]" that he filed an appeal is "not sufficient to defeat [Defendant's] well-supported motion for summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017); *see also Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992) (finding that for evidentiary purposes, plaintiff's verified complaint, which contained "nothing but mere conclusory allegations" could not survive a motion for summary judgment" in favor of the defendants); *Meeks v. Schofield*, 10 F. Supp. 3d 774, 784 (M.D. Tenn. 2014) ("Accordingly, speculative and conclusory allegations, even if made within a verified complaint, are insufficient to withstand a motion for summary judgment."). Therefore, there is no genuine dispute that Plaintiff failed to exhaust his available administrative remedies in accordance with Jail procedures prior to filing this action, and Defendant is entitled to summary judgment.

**B. Merits**

Further adjudication is not necessary considering the Court's exhaustion ruling. Nonetheless, out of an abundance of caution, the Court finds that the undisputed material facts demonstrate that Plaintiff cannot establish a violation of either the RLUIPA or First Amendment, and Plaintiff has not come forward with evidence demonstrating a jury could

reasonably find in his favor as to these claims. *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (noting a "mere existence of a scintilla of evidence" in support of non-moving party's position will not defeat a motion for summary judgment; there must be evidence from which a jury could find for the non-movant (citing *Anderson*, 477 U.S. at 252)).

This Court previously summarized the relevant law as follows:

> RLUIPA "applies to prisons that receive federal funds and prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)).
>
> "[T]he Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law. . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). To establish a free exercise violation, Plaintiff must establish that (1) the belief or practice asserted is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987) (internal citations and citation omitted).
>
> Under both the First Amendment and RLUIPA, a prisoner must show that the challenged government action substantially burdens his religious beliefs in order to sustain a claim. *Haight*, 763 F.3d at 559; *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010); *see also Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). And "the Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). A burden is substantial where it (1) forces an individual to choose between following the tenets of his religion and foregoing governmental benefits or (2) places "substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Id*. at 734.
>
> Under the First Amendment, "the circumstances of prison life may require some restriction[s] on prisoners' exercise of their religious beliefs" even if a

> religious practice is substantially burdened. *Walker*, 771 F.2d at 929. Accordingly, a prisoner's rights may be reasonably restricted to accommodate "legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). If a regulation that interferes with an inmate's constitutional rights is reasonably related to a legitimate penological interest, the courts then balance "(1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy alternatives' exist that suggest 'the regulation is not reasonable.'" *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (quoting *Turner*, 482 U.S. at 89–91).
>
> A correctional institution must first "articulate their interest in the regulation" to demonstrate a legitimate penological interest. *Figel v. Overton*, 121 F. App'x 642, 646 n. 2 (6th Cir., Feb. 4, 2005) (internal citations omitted). The correctional facility's burden of demonstrating its interest is "slight, and in certain instances, the connection may be a matter of common sense." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Once it does so, "the burden is on the prisoner to disprove the validity of the regulation at issue." *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.")).

[Doc. 6, pp. 9–10].

The uncontested facts in this case demonstrate that in-person Bible study/group religious services were not available to Plaintiff because he was voluntarily housed in the PC unit of the Jail [Doc. 30-2 ¶ 12]. The competent evidence shows that inmates in PC are not permitted to attend in-person services for a variety of reasons, including the fact that inmates on PC are usually located in that unit due to some fear about their safety in general population [*Id.*]. This was the case with Plaintiff, who had expressed concerns about his safety in general population due to being a sex offender and being labeled a "snitch" by other inmates [*Id.*]. Further, mixing PC inmates, such as Plaintiff, with general population inmates puts PC inmates at greater risk of assault and thus increases a risk to offer safety,

as well, because officers would have to intervene in any ensuing assault [*Id.*]. The competent evidence further shows that the process of permitting group in-person religious services with volunteers is time consuming and taxing on limited corrections staff, and that mixing in PC inmates, who would have to be segregated from general population inmates in multiple, smaller sessions would make the strain "borderline unmanageable" on the limited staff [*Id.*].

Additionally, there is also no dispute that Plaintiff was given access to a Bible, was free to practice his religious beliefs at any time, that the Jail never took any steps to hinder or prevent Plaintiff from practicing his religion, and that any volunteer (such as a minister, clergy, or other religious volunteer) could visit Plaintiff at any time during visiting hours for Bible study and/or other religious activities [*Id.* ¶ 16]. Plaintiff, however, never made such a request [*Id.*].

Accordingly, Plaintiff has failed to establish a substantial burden on the exercise of his religion. And even if he were able to establish such a burden, Defendant has identified a compelling interest in maintaining order and safety in the Jail due to staffing limitations and space constraints. *See, e.g., Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005) (holding order and safety are compelling interests and RULIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety"); *see also Gayle v Harmon*, 207 F. Supp. 3d 549, 554 (E.D. Pa. Sept. 13, 2016) (holding restriction on inmate in administrative segregation did not violate RLUIPA or the First Amendment where inmate could request a visit from a spiritual advisor, was provided a Bible, and did not show his religious exercise was substantially burdened by the restriction). Therefore,

Plaintiff has demonstrated that a reasonable jury could find that Defendant violated his rights under RLUIPA or the First Amendment, and Defendant is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED**, and this action will be **DISMISSED with prejudice**. All pending motions [*See* Doc. 33] are **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this decision would not be taken in good faith and would be totally frivolous, and therefore, Plaintiff is **DENIED** leave to proceed *in forma pauperis* should he choose to appeal. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24. An appropriate judgment order will enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE